**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| **JULIÁN OLIVARES,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**UNIVERSITY OF CHICAGO ET AL.,**<br><br>**Defendants.** | **Civil Action No. 2:14-cv-00966-JRG-RSP** |

**DEFENDANT THE UNIVERSITY OF CHICAGO'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE OR, IN THE ALTERNATIVE, TO TRANSFER TO THE MIDDLE DISTRICT OF NORTH CAROLINA AND MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

Plaintiff Julián Olivares ("Plaintiff") has brought claims against Margaret R. Greer and Elizabeth Rhodes (the "Authors"), and the University of Chicago (the "University"),[1] (collectively, "Defendants"), in the Eastern District of Texas for alleged copyright violations and related state law claims. None of the Defendants, however, have had any contacts with the State of Texas or the Eastern District of Texas sufficient to establish personal jurisdiction or venue in this District. The University therefore moves to dismiss the First Amended Complaint ("Complaint") for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), and for improper venue pursuant to Fed. R. Civ. P. 12(b)(3). In the alternative, the University joins the Authors' Motion to transfer the case to the United States District Court for the Middle District of North Carolina pursuant to 28 U.S.C. § 1404(a) (the "Authors' Motion"). Finally, the University joins the Authors' Motion to dismiss the case for failure to state a claim upon which relief can be granted. *Id*.

[1] Plaintiff has also named the University of Chicago Press (the "Press") as a defendant in the First Amended Complaint. The Press, however, is a division of the University of Chicago, not a separate legal entity, and therefore is not properly named as a defendant in this suit.

## I. INTRODUCTION

Plaintiff alleges that he is the author of "Novelas amorosas y ejemplares, by Maria de Zayas y Sotomayor" ("Plaintiff's Book"). He alleges that Plaintiff's Book is an interpretation of a work authored by Maria de Zayas y Sotomayor in 1637 entitled "Novelas amorosas y ejemplares" (the "Original Work"). (Compl. ¶ 8.) Plaintiff alleges that his work was first published in 2000 and is copyrighted in Spain. (Compl. ¶ 9.) He further alleges that the effective date of registration on Plaintiff's Book in the United States is October 7, 2014. According to the Complaint, Plaintiff is the "sole proprietor of the right to sue for copyright infringement of the U.S. copyright" for Plaintiff's Book. (Compl. ¶ 10.)

Together, the Authors created a novel entitled "Exemplary Tales of Love and Tales of Disillusion" (the "Work"), which is a translation of the Original Work. (Greer Dec. ¶ 13; Rhodes Dec. ¶ 7.) In 2009, the University of Chicago Press published the Work.[2]

Plaintiff alleges that Defendants included original, copyrighted material from Plaintiff's Book in the Work, and therefore infringed the copyright in Plaintiff's Book. (Compl. ¶¶ 11, 15.) He further alleges that Defendants infringed the international copyright in Plaintiff's Book, were unjustly enriched by "present[ing] Plaintiff's created material as having been created and owned by Defendants," and "hold money … that in equity and good conscience belongs to Plaintiff." (Compl. ¶¶ 29, 38, 42.)

The University moves to dismiss the Complaint because of a number of significant deficiencies. First, Plaintiff's Complaint is completely devoid of any allegations to justify the exercise of personal jurisdiction over the University. In fact, the University does not have sufficient minimum contacts with Texas to subject it to personal jurisdiction in the State.

---

[2] The Complaint identifies the Work by ISBN-13: 978-0226768656. (Compl. ¶ 16.) As noted in the Authors' Motion, the Court may take judicial notice of the fact that the Work was published in 2009. *U.S. ex rel. Wall v. Vista Hospice Care, Inc.*, 778 F. Supp. 2d 709, 721 n. 63 (N.D. Tex. 2011).

As Plaintiff affirmatively alleges, the University has its principal place of business in Chicago, Illinois. (Compl. ¶¶ 4, 5.) The University is not incorporated in Texas, does not maintain its principal place of business in Texas, and does not transact substantial business in the State. Nor did the University direct any of the actions alleged in the Complaint at Texas. The Court therefore may not properly exercise personal jurisdiction over the University. Second, venue is not proper in the Eastern District of Texas. None of the acts alleged in the Complaint occurred in Texas, and none of the Defendants reside in the District. Venue therefore does not properly lie in the District, and the Court should dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(3). Finally, as argued in the Authors' Motion, the Complaint fails to state a claim upon which relief may be granted, and should therefore be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## II. THE UNIVERSITY IS NOT SUBJECT TO PERSONAL JURISDICTION IN THE STATE OF TEXAS.

Plaintiff's Complaint makes no effort to allege facts sufficient to support the exercise of personal jurisdiction over the University. *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014) ("The plaintiff has the burden to make a prima facie showing that personal jurisdiction is proper."). To support the exercise of personal jurisdiction, a plaintiff must show that the defendant had "minimum contacts" with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation omitted). Texas's long-arm statute permits the exercise of personal jurisdiction "to the limits of federal constitutional due process." *Companion Prop. and Cas. Ins. Co. v. Palermo*, 723 F.3d 557, 559 (5th Cir. 2013) (citing *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999)). Due process, and therefore the Texas statute, permits personal jurisdiction only when the defendant

"purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal quotation omitted). To be subject to personal jurisdiction in Texas, a defendant must have engaged in some purposeful conduct within the forum "such that he should reasonably anticipate being haled into court there." *Id.* at 474; *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Texas recognizes two types of personal jurisdiction: general and specific. *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). Neither provides a basis for personal jurisdiction in Texas over the University.

**A. The University's Contacts with Texas are Insufficient to Support the Exercise of General Personal Jurisdiction.**

A court may exercise "general jurisdiction" over a defendant if the defendant maintains contacts with the forum State "so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, ––– U.S. ––––, 134 S. Ct. 746, 761 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, ––– U.S. ––––, 131 S. Ct. 2846, 2851 (2011)). To exercise general jurisdiction, the nature of the defendant's contacts with the forum must be "such that [the defendant] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp.*, 444 U.S. at 297. The University does not engage in continuous and systematic relations with Texas that render it "at home" in the State, so the University is not subject to the general jurisdiction of Texas courts.

*Daimler* is the Supreme Court's most recent expression of these principles. There, the plaintiffs sued Daimler, a German corporation, for its Argentinian subsidiary's alleged role in Argentina's "Dirty War." 134 S. Ct. at 750-51. The plaintiffs alleged that the District Court in California could assert personal jurisdiction because Daimler's U.S. subsidiary, MBUSA, distributed Daimler-manufactured vehicles through dealerships in California. *Id*. at 751.

MBUSA was the "largest supplier of luxury vehicles to the California market" and its California sales accounted for 2.4% of Daimler's worldwide sales. *Id*. at 752. Daimler also maintained multiple California-based facilities. *Id*. The Ninth Circuit characterized MBUSA's contacts with the forum as "extensive" and "important" to Daimler, and determined that Daimler was therefore subject to general jurisdiction in California. 644 F.3d at 921-22.

The Supreme Court reversed and rejected the Ninth Circuit's expansive view of general jurisdiction, noting that the Court of Appeals' formulation would "subject foreign corporations to general jurisdiction whenever they have an in-state subsidiary or affiliate." 134 S. Ct. at 760. The Court also explicitly rejected the plaintiffs' contention that "continuous and systematic" contacts alone are sufficient to confer jurisdiction. *Id*. at 761–62 (declaring such a test for general jurisdiction "unacceptably grasping" and "exorbitant"). Instead, the Court explained that "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there," *Daimler*, 134 S. Ct. at 760 (citing *Goodyear*, 131 S. Ct. at 2853–54), and that the paradigmatic fora for the exercise of general jurisdiction over a corporation are its state of incorporation and its principal place of business. *Id*. Beyond those two states, the Court cautioned that it is "an exceptional case" when "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Id*. at 761 n. 19.

Like the defendant in *Daimler*, the University is not incorporated in the forum State, nor does it have its principal place of business in Texas. (Kroll Dec. ¶ 2.)[3] As Plaintiff affirmatively alleges, the University has its principal place of business in Chicago, Illinois.

---

[3] In analyzing the personal jurisdiction question, the court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Quick Technologies, Inc. v. Sage Group PLC*, 313 F.3d 338, 344 (5th Cir. 2002) (quoting *Thompson v. Chrysler Motors Corp*., 755 F.3d 1162, 1165 (5th Cir.1985)), *cert. denied*, 540 U.S. 814 (2003).

(Compl. ¶¶ 4, 5.) The Fifth Circuit has noted that it is "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business." *Monkton*, 768 F.3d at 432. Only extraordinarily extensive contacts in the Texas would support the exercise of general jurisdiction over the University. Plaintiff has not alleged any facts sufficient to carry its burden of demonstrating such contacts.

The University maintains no office in Texas and does not transact substantial business in Texas. (Kroll Dec. ¶ 4.) Plaintiff does not allege that any part of the University's book publishing or distribution process occurs in Texas. The University does maintain minor contacts with Texas that are the contacts typical of all national universities, including recruiting, fundraising, and the maintenance of a global website. (Kroll Dec. ¶ 3.) Courts around the country have unanimously held that these *de minimis* contacts with a forum are insufficient to subject a university to general jurisdiction in a foreign forum. *See Am. Univ. Sys., Inc. v. Am. Univ.*, 858 F. Supp. 2d 705, 712-13 (N.D. Tex. 2012) (finding no general jurisdiction in Texas over a D.C. university that recruited in Texas, employed Texas residents, sponsored alumni events in Texas, sold merchandise in Texas, solicited donations in Texas, and coordinated with Texas universities to offer a semester in D.C.); *see also Gehling v. St. George's Sch. of Med., Ltd.*, 773 F.2d 539 (3d Cir. 1985) (finding no general personal jurisdiction in Pennsylvania over a Grenada-based school that recruited and enrolled Pennsylvania students, sent administrators to cities in Pennsylvania to advertise the school, and operated a joint international program with a Pennsylvania school); *Park v. Oxford Univ.*, 35 F. Supp. 2d 1165, 1167 (N.D. Cal. 1997), *aff'd*, 165 F.3d 917 (9th Cir. 1998) ("Oxford solicits money from California residents as an important form of fund-raising. The foregoing contacts fall far short of establishing general jurisdiction..."); *Snodgrass v. Berklee Coll. of Music*, No. 12-cv-10255, 2013 WL 3337815, **2-

5 (N.D. Ill. July 2, 2013) *aff'd*, 559 Fed. Appx. 541 (7th Cir. 2014) (Massachusetts college enrolling Illinois students, employing Illinois residents, and maintaining an alumni association in Illinois, was not subject to general jurisdiction there); *Corrales Martin v. Clemson Univ.*, No. 07-536, 2007 WL 4531028, *5 (E.D. Pa. Dec. 20, 2007) (noting that plaintiff had "submitted no case in which a defendant university from a nonforum state has been held subject to the general jurisdiction of a forum state").

The fact that the University employed three temporary, non-benefit eligible Texas residents, two semi-permanent employees, and two full-time Texas residents in 2014 also does not change the analysis. (Kroll Dec. ¶ 5.) Employing a limited number of individuals in Texas does not amount to the type of systematic and continuous contacts necessary to establish general jurisdiction, particularly in the University context. *See, e.g.*, *Am. Univ. Sys., Inc.*, 858 F. Supp. 2d at 713-14 (employment of more than 63 Texas residents insufficient to establish general jurisdiction in Texas over D.C.-based university); *Snodgrass*, 2013 WL 3337815 at **2-5 (employment of Illinois residents was insufficient to establish jurisdiction in Illinois over Massachusetts-based university).

Plaintiff's Complaint alleges no facts sufficient to satisfy the exacting standard to establish general jurisdiction set forth in *Daimler*. The University does not maintain any contacts in the State of Texas so continuous and systematic as to render it "at home" in Texas, and general jurisdiction over the University is therefore improper.

### B. The University had No Contacts with Texas Arising out of the Facts Alleged in the Complaint.

Plaintiff's Complaint does not allege any interaction whatsoever between the University and the forum State and therefore fails to establish that the Court may properly exercise specific jurisdiction over the University. Specific jurisdiction "focuses on the

relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, — U.S. —, 134 S. Ct. 1115, 1121 (2014) (internal quotation omitted). The analysis "is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear*, 131 S. Ct. at 2851 (internal quotation omitted).

In determining whether a defendant's suit-related conduct creates a substantial connection with the forum State, the court must first evaluate whether the relationship arises from "contacts that the defendant *himself* creates with the forum State." *Walden*, 134 S. Ct. at 1122 (internal citation omitted). A plaintiff's contacts with the forum cannot be decisive in determining whether personal jurisdiction exists. *Id*. Additionally, the minimum contacts analysis must focus on "the defendant's contacts with the forum state itself, not the defendant's contacts with persons who reside there." *Id*. (internal quotations and emphasis omitted). As a preliminary matter, Plaintiff's Complaint does not allege that the University had any contacts with Plaintiff while he resided in Texas.

In the Fifth Circuit, courts apply a three-step analysis to determine whether specific jurisdiction may be properly exercised over a defendant:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Monkton*, 768 F.3d at 433 (citing *Seiferth v. Helicopteros Atuneros, Inc*., 472 F.3d 266, 271 (5th Cir. 2006)). If the plaintiff can establish the first two prongs, then the burden shifts to the defendant to demonstrate that the exercise of jurisdiction would be unreasonable. *Id.*

Plaintiff has not alleged that the University has had any contacts with Texas that would support the first prong of the analysis. As discussed above, the University has no office or

other physical presence in Texas. (Kroll Dec. ¶ 4.) None of the few temporary or permanent employees of the University that reside in Texas are in any way related to the publishing activities of the University or the allegations in the Complaint. (Kroll Dec. ¶¶ 6, 7, 8.) Plaintiff has not alleged that any act of infringement took place in Texas. Nor did any of the pendant state law claims in the Complaint occur in Texas. Any alleged enrichment or "money had and received" could not have occurred in Texas because any monies from the sale of the Work would have been received in Illinois. (Kiely Dec. ¶ 5.)

Plaintiff does not allege and cannot credibly argue that the University does substantial business in Texas related to the Work. The University has sold and shipped just a *single* copy of the Work to Texas. (Kiely Dec. ¶¶ 7, 9.) In a recent concurring opinion focused on minimum contacts analysis, Justice Breyer emphasizes that " [n]one of [the Court's] precedents finds that a single isolated sale, even if accompanied by the kind of sales effort indicated here, is sufficient" to establish personal jurisdiction. *J. McIntyre Mach., Ltd. v. Nicastro*, —— U.S. ——, 131 S. Ct. 2780, 2792 (2011) (J. Breyer, concurring). The opinion further states that "the Court, in separate opinions, has strongly suggested that a single sale of a product in a State does not constitute an adequate basis for asserting jurisdiction over an out-of-state defendant." *Id*.; *see also Pangaea, Inc. v. Flying Burrito LLC*, 647 F.3d 741, 749 (8th Cir. 2011) ("[T]he conclusion in the *J. McIntyre* concurrence that a single contact, in certain contexts, is an insufficient basis for personal jurisdiction, provides relevant guidance."). The Fifth Circuit has explicitly noted that it follows Justice Breyer's concurring opinion in *McIntyre* as binding precedent. *See In re Chinese Manufactured Drywall Products Liab. Litig*., 742 F.3d 576, 586 (5th Cir. 2014).

Indeed, the Fifth Circuit has "consistently been hesitant to establish personal jurisdiction based on a single contact with the forum state." *LCW Automotive Corp. v. Restivo Enterprises*, No. SA-04-CA-0361-XR, 2004 WL 2203440, at *6 (W.D. Tex. Sept. 24, 2004) (citing *Growden v. Ed Bowlin & Assocs., Inc*., 733 F.2d 1149, 1151 (5th Cir. 1984) and *Singletary v. B.R.X., Inc.*, 828 F.2d 1135, 1136 (5th Cir. 1987)). In *LCW Auto*, the district court refused to exercise personal jurisdiction over the defendant, despite the fact that a portion of the plaintiff's cause of action arose from the single contact, because "[p]laintiff [was] unable to allege more than a single contact with the State of Texas." 2004 WL 2203440, at *6.[4]

Further, in the intellectual property context, other courts that have considered the minimal sales of allegedly infringing products made through an internet website have held those sales to be insufficient minimum contacts to establish personal jurisdiction. *See, e.g., Graduate Mgmt. Admission Council v. Raju*, 241 F. Supp. 2d 589 (E.D. Va. 2003) (finding sales to two Virginia customers of materials purchased via defendant's website which allegedly infringed plaintiff's trademark an insufficient basis for personal jurisdiction); *Silver Ring Splint Co. v. Digisplint, Inc*., 508 F. Supp. 2d 508, 513 (W.D. Va. 2007) ("The fact that a website is *available* in Virginia—and even the fact that it is used by Virginians—is not the same as an intentional direction of activities toward Virginia sufficient to meet the 4th Circuit's modified *Zippo* test [for personal jurisdiction]. The same is true of a single sale initiated via fax by a Virginian."); *Lindgren v. GDT, LLC*, 312 F. Supp. 2d 1125, 1131 (S.D. Iowa 2004) (rejecting claim that personal jurisdiction could be based on minimal internet sales into the district because there was

---

[4] The Fifth Circuit has, on occasion, held that a single contact with the forum state is sufficient to establish jurisdiction. *See, e.g., Brown v. Flowers Indus., Inc*., 688 F.2d 328, 330 (5th Cir. 1982); *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001); *FCA Invs. Co. v. Baycorp Holdings, Ltd*., 48 Fed. Appx. 480 (5th Cir. 2002). These cases, however, are limited to instances of fraud and defamation where the fraud and defamation were accomplished by means of a telephone call or other communication to the jurisdiction. Additionally, the Fifth Circuit has also held the opposite: that a single communication into the jurisdiction cannot support personal jurisdiction. *See Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994) (finding no personal jurisdiction when defendants made alleged defamatory statements on a phone call with Texas reporter).

"no evidence that [defendant] took any purposeful action towards [the forum]. . . [i]t merely processed the orders from Iowa customers who visited its site."); *Shamsuddin v. Vitamin Research Prods*., 346 F. Supp. 2d 804, 813 (D. Md. 2004) (two internet sales to plaintiff's acquaintances in forum state were insufficient to support the exercise of specific jurisdiction in patent infringement action). The University does maintain a website related to its publications, but Plaintiff has not alleged and cannot establish that the University specifically targeted Texas through the website, or that the University conducted substantial business related to the sale of the Work in Texas by means of the website. The simple existence of the website, without any substantial connection to the claims at issue in this case, cannot support specific personal jurisdiction in Texas.[5]

Additionally, the analysis of specific personal jurisdiction "require[s] virtually a direct link between claim and contacts in order to pursue a specific jurisdiction analysis." *Kervin v. Red River Ski Area, Inc*., 711 F. Supp. 1383, 1389-90 (E.D. Tex. 1989). Plaintiff's infringement claim does not arise out of the University's sales of other, unrelated works, and the sale of any non-infringing work, therefore, is irrelevant to the determination of specific jurisdiction. *See, e.g., Singletary*, 828 F.2d at 1136 (rejecting personal jurisdiction based on the sale of a unrelated item because the "sale, however, had nothing to do with [plaintiff's] claim; his claim did not arise out of and was not related to this sale").

---

[5] Nor does the existence of the website support general jurisdiction post-*Daimler*. In *Revell v. Lidov*, 317 F.3d 467, 471 (2002), the Fifth Circuit noted that use of its "sliding scale" analysis for the interactivity of websites was "not well adapted to the general jurisdiction inquiry, because even repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction – in other words, while it may be doing business *with* Texas, it is not doing business *in* Texas." Post-*Daimler*, it is even clearer that the mere operation of a website accessible in the forum State cannot serve as the basis of general jurisdiction because under that formulation, a corporation would be subject to suit in every forum. *See also Locke v. Ethicon Inc*., No. 4:14-CV-2648, 2014 WL 5819824, at *6 (S.D. Tex. Nov. 10, 2014); *Best Little Promohouse in Texas LLC v. Yankee Pennysaver, Inc*., No. 3:14-CV-1824-BN, 2014 WL 5431630, at *3 (N.D. Tex. Oct. 27, 2014) ("Even an interactive website, in itself, is insufficient to establish general jurisdiction where the website shows, at most, that a defendant conducts business with the forum State, not in the forum state.").

Plaintiff has failed to establish that the University's suit-related conduct creates a substantial connection with Texas for the purposes of specific jurisdiction. The Complaint does not allege any significant interaction between the University and the State of Texas, and certainly no substantial interaction relating to the specific causes of action in the Complaint. Because Plaintiff has failed to establish either general or specific jurisdiction, the exercise of personal jurisdiction over the University would be improper.

### C. The Assertion of Personal Jurisdiction over the University in Texas would be Fundamentally Unfair.

Plaintiff's attempt to invoke this Court's jurisdiction over the University further fails because such an exercise of jurisdiction would not comport with fair play and substantial justice. In determining whether the assertion of jurisdiction is fair and just, the Fifth Circuit considers: "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies." *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d at 473. These factors weigh in favor of the University.

The University would be substantially burdened by having to litigate in a forum with which it has no connection. *See World-Wide Volkswagen Corp.*, 444 U.S. at 291-92 (acknowledging the burdens placed on defendants who have to litigate in a distant forum); *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, No. 2:13-CV-655, 2014 WL 4354130, at *10 (E.D. Tex. Sept. 2, 2014). Additionally, Texas does not have a strong interest in adjudicating a dispute where only a single act of alleged infringement may have occurred in the state. The dismissal of this action based on lack of personal jurisdiction would not hinder the efficient administration of justice because the Complaint was recently filed, and the Court has

not yet considered the merits of the case. At this early juncture, dismissal for lack of personal jurisdiction would not unduly prejudice Plaintiff. No considerations of efficiency or fairness to Plaintiff override the significant burden to the University of being forced to litigate in a forum where it does not have a substantial connection.

## III. VENUE IS NOT PROPER IN THE EASTERN DISTRICT OF TEXAS.

Plaintiff's Complaint also fails to establish that venue is proper in this District. Once a defendant raises the issue of improper venue, the plaintiff bears the burden of demonstrating that venue is proper. *ATEN Int'l Co. v. Emine Tech. Co.*, 261 F.R.D. 112, 120-21 (E.D. Tex. 2009). In cases with multiple defendants and claims, such as the instant case, a plaintiff must establish that venue is proper as to each defendant and each claim. *Collins v. Doe*, No. CIV.A. H-10-2882, 2012 WL 1414246, at *3 (S.D. Tex. Apr. 23, 2012).

Although 28 U.S.C. § 1391(b) governs most federal claims, venue for copyright-infringement claims is governed by 28 U.S.C. § 1400(a).[6] That statute provides that venue is proper "in the district in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a). Plaintiff's Complaint affirmatively alleges that Professor Greer resides in North Carolina, Professor Rhodes in Massachusetts, and the University in Illinois. (Compl. ¶¶ 6, 7, 4.) Plaintiff does not allege that any Defendant has an agent that resides in the Eastern District of Texas. It is clear that no Defendant resides in the District.

The Fifth Circuit has held that a defendant "may be found" in "any district in which he or she may be subject to personal jurisdiction, as analyzed as if the district were a

[6] Plaintiff asserts that venue is proper in this District under 28 U.S.C. § 1391, as well as 28 U.S.C. § 1400(a). (Compl. ¶ 2.) Plaintiff has asserted that this Court has jurisdiction over this matter pursuant to 27 U.S.C. §§ 1331, 1338(a), and 1338(b) [sic], and under its supplemental jurisdiction. (Compl. ¶ 1). Because Plaintiff does not assert diversity jurisdiction, and the University believes venue is properly governed by 28 U.S.C. § 1400(a), the University will not conduct a § 1391 venue analysis. The University concurs with the conclusion in the Authors' Motion that venue would not properly lie under §1391.

separate state." *Funimation Entm't v. Does 1 - 1,427*, No. 2:11-CV-00269, 2013 WL 5200453, at *2 (E.D. Tex. Sept. 16, 2013). Courts in the Eastern District Texas, therefore, must analyze whether a defendant would be subject to personal jurisdiction in this District. As noted above, the exercise of personal jurisdiction requires "(1) minimum contacts by the defendant purposefully directed at the forum state, (2) a nexus between the defendant's contacts and the plaintiff's claims, and (3) that the exercise of jurisdiction over the defendant be fair and reasonable." *ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 498 (5th Cir. 2012). The relevant inquiry is whether the University "purposefully avail[ed]" itself of "the privilege of conducting activities within the forum," such that it "should reasonably anticipate being haled into court." *World-Wide Volkswagen Corp.*, 444 U.S. at 297.

The University has not had any contacts with the Eastern District of Texas, either related or unrelated to Plaintiff's claims that would support the exercise of personal jurisdiction in the District. Critically, the University has not sold or shipped a single copy of the Work to any address in the Eastern District of Texas. (Kiely Dec. ¶¶ 6, 8.) The University did not conduct any part of its publishing process in the District, and did not contact any resident of the District in connection with the publishing or sale of this Work. It has therefore not "purposefully avail[ed]" itself of "the privilege of conducting activities" in the Eastern District, and has not "purposefully directed" any action related to the Work at the Eastern District of Texas. Further, there are no allegations in the Complaint that the University took any steps to specifically market or advertise the sale of the Work in the District.

As discussed above, the existence of an interactive website that may be accessed from within the Eastern District of Texas is not a sufficient basis for the exercise of personal jurisdiction, especially when there have been no sales into the District. *People Solutions Inc. v.*

*People Solutions Inc*., No. CIV.A.399–CV–2339–L, 2000 WL 1030619, at *4 (N.D. Tex. July 25, 2000) ("Personal jurisdiction should not be premised on the mere possibility, with nothing more, that Defendant may be able to do business with Texans over its web site; rather, Plaintiff must show that Defendant has 'purposefully availed itself' of the benefits of the forum state and its laws."); *LCW Auto. Corp. v. Restivo Enterprises*, No. SA-04-CA-0361-XR, 2004 WL 2203440, at *5 (W.D. Tex. Sept. 24, 2004). In the instant case, Plaintiff makes no allegation that there have been sales into the District whatsoever, and, as the University has affirmatively and repeatedly stated, according to sales and distribution records, no sales have been made to the District.

Plaintiff has affirmatively plead that no Defendant resides in the Eastern District of Texas, and cannot show that any defendant may be "found in" the District through a personal jurisdiction analysis. There is no connection between this litigation and the Eastern District of Texas. Therefore, venue is not proper in this District, and the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(3).

## IV. IN THE ALTERNATIVE, THE COURT SHOULD TRANSFER THIS ACTION TO THE MIDDLE DISTRICT OF NORTH CAROLINA.

The University joins the Authors' Motion to transfer venue to the Middle District of North Carolina. For all the reasons articulated in the Authors' Motion, the University moves to dismiss the Complaint for improper venue, and in the alternative, moves to transfer venue to the Middle District of North Carolina.

## V. THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

The University also joins the Authors' Motion to Dismiss the Complaint pursuant to Rule 12(b)(6), and hereby incorporates all arguments expounded in the relevant portion of the

Authors' Motion. For the reasons stated in the Authors' Motion, the Complaint should be dismissed for failure to state a claim upon which relief may be granted.

Dated: January 5, 2015

Respectfully submitted,

GILLAM & SMITH, L.L.P.

*/s/Melissa Richards Smith*

Melissa Richards Smith
Texas State Bar No. 24001351
GILLAM & SMITH, L.L.P.
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
E-mail: melissa@gillamsmithlaw.com

Oscar L. Alcantara
*(via Pro Hac Vice)*
Amanda G. Penabad
*(via Pro Hac Vice)*
GOLDBERG KOHN LTD.
55 East Monroe Street, Suite 3300
Chicago, Illinois 60603-5792
Telephone: (312) 201-4000

***Attorneys for Defendant***
***University of Chicago***

**CERTIFICATE OF SERVICE**

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served this 5th day of January, 2015, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/ Melissa R. Smith*

Melissa R. Smith